UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TAMMY M.,[1]

                                    Plaintiff,        Case # 19-cv-820-FPG

v.                                                      DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.
_____

## INTRODUCTION

Plaintiff Tammy M. protectively applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act on or about April 10, 2015, alleging disability beginning September 14, 2014. Tr.[2] 285-94. After the Social Security Administration ("SSA") denied her claim, Tr. 127-42, Plaintiff appeared, with counsel, at a hearing on April 12, 2018, before Administrative Law Judge Catherine Harper (the "ALJ"). Tr. 92-126. On July 5, 2018, the ALJ issued an unfavorable decision. Tr. 72-86. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-8. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 6, 12. Plaintiff filed a reply. ECF No. 13. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further proceedings.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 4.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

1

**LEGAL STANDARD**

**I.      District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.     Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in gainful activity since September 14, 2014, the alleged onset date. Tr. 74. At step two, the ALJ found that Plaintiff had the following severe impairments: cervical stenosis; generalized anxiety disorder with panic disorder; and depression. Tr. 74. The ALJ determined that Plaintiff's degenerative disc disease, coronary artery disease, mild mitral valve prolapse, rhinitis, muscle cramps, vitamin D deficiency, carpal tunnel syndrome, obesity, and substance abuse were non-severe. Tr. 74-76.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. Tr. 77-78. Next, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b), except that Plaintiff could frequently climb ladders, ropes, scaffolds, and crawl, and handle objects with both hands. Plaintiff would further be limited to simple, routine work in a low-stress job with only occasional changes in the work setting. Tr. 78-84.

At step four, the ALJ found that Plaintiff would be unable to perform any past relevant work. Tr. 85. At step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform—such as a cashier, mail clerk, and hand packager—and therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 85-86.

**II.    Analysis**

Plaintiff argues that remand is required because (1) the ALJ erroneously relied on a stale medical opinion from Stevie Carraro, M.D.'s consultative opinion and (2) the ALJ cherry picked

3

opinion evidence using her own lay interpretation of the examination findings. ECF No. 6-1 at 11-19. Because the Court agrees with Plaintiff's first argument, it declines to address the second.

On June 27, 2015, Dr. Carraro, a consultative evaluator, produced a thorough opinion on Plaintiff's physical functioning and limitations. Tr. 607-613. Dr. Carraro reviewed Plaintiff's medical history and conducted a physical examination. The examination revealed reduced range of motion in several cervical and thoraco-lumbar areas. Tr. 611. Plaintiff reported being able to sit, stand, and walk for only 10 minutes at a time. Tr. 608. Due to that limited range of motion and Plaintiff's pain, Dr. Carraro opined that Plaintiff had "degenerative disc disease in her neck" which "includes some mild limitations in her range of motion in her cervical neck and some decreased sensation in the right arm and hand that is worse than the left." Tr. 612. Dr. Carraro concluded that Plaintiff could walk normally but would have "mild limitations with sitting and standing due to back pain." Tr. 612. Additionally, Dr. Carraro found that Plaintiff would have "mild limitations with lifting and carrying weight due to arm and hand numbness and weakness, and back pain." Tr. 612. Finally, Dr. Carraro opined that Plaintiff would occasionally be able to stoop, crouch, and squat due to pack pain, and that she would be limited in her ability to reach, handle, feel, grasp, and finger due to arm and hand weakness. Tr. 612.

In formulating the RFC, the ALJ gave "great weight" to Dr. Carraro's opinions about Plaintiff's mild limitations for walking, standing, sitting, and lifting. Tr. 84. The ALJ gave "no weight" to Dr. Carraro's opinions regarding Plaintiff's manipulative[4] and crouching limitations because, according to the ALJ, "Dr. Carraro's objective findings due [sic] not support these limitations." Tr. 84.

---

[4] Although the Court will not address Plaintiff's second argument in detail, Dr. Carraro's examination *did* reveal some manipulative limitations, Tr. 610, suggesting that the ALJ's rejection of the part of Dr. Carraro's opinion indicating that Plaintiff would be limited in that regard may not be supported by substantial evidence.

Plaintiff argues that Dr. Carraro's June 2015 opinion was stale by the time the ALJ incorporated some of the opinion's functional limitations into the RFC in 2018. "While the mere passage of time does not necessarily render a medical opinion outdated or stale, subsequent surgeries and treatment notes indicating a claimant's condition has deteriorated may." *Moon v. Comm'r of Soc. Sec.*, No. 17-CV01312-MAT, 2019 WL 2240235, at *6 (W.D.N.Y. May 24, 2019) (citing *Jones v. Colvin*, No. 13-CV-06443, 2014 WL 256593, at *7 (W.D.N.Y. June 6, 2014) (ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition")); *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017) ("A medical opinion may be stale if it does not account for the claimant's deteriorating condition."). "A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 469-70 (W.D.N.Y. 2018) (concluding that ALJ's decision incorporating opinion from source rendered before surgeries and before condition worsened was not based on substantial evidence).

Here, an MRI conducted on September 21, 2016—*after* Dr. Carraro rendered her opinion but *before* the ALJ's decision—revealed that Plaintiff's condition did indeed deteriorate after 2015. Tr. 650. To be sure, Dr. Carraro's opinion regarding Plaintiff's limitations due to back pain seem to be consistent with an MRI conducted on April 8, 2015—*before* Dr. Carraro rendered her opinion—which revealed "*moderate* loss of disc height at 5-6 and 6-7." Tr. 573 (emphasis added). The MRI noted that "[t]he odontoid process is intact and the C1-C2 relationships are preserved," but there "is right foraminal narrowing at 3-4" and "bilateral foraminal narrowing at 5-6." Tr. 573. However, the 2016 MRI showed that the deteriorations noted in the 2015 MRI to be "moderate" were now "severe."

Specifically, the 2016 MRI indicated "severe spinal canal narrowing and severe bilateral foraminal narrowing" at C3-4, "mild spinal canal and moderate bilateral foraminal narrowing" at C4-5, "severe spinal canal narrowing" and "severe foraminal narrowing" at C5-6, and "mild spinal canal narrowing" and "moderate bilateral foraminal narrowing" at C6-7.  Tr. 650.  Overall, the MRI revealed "[d]egenerative disc disease which is most pronounced at the C3-4 and C5-6 levels resulting in severe spinal canal and foraminal narrowing."  Tr. 650.

Contrary to the ALJ's assertions, treatment notes that post-date Dr. Carraro's opinion corroborate that Plaintiff's condition had worsened by the 2016 MRI.  An August 25, 2016 treatment note indicated that Plaintiff had limited range of motion in her cervical spine and that Plaintiff endorsed increased difficulty with fine motor movements and unsteadiness in addition to low back pain and leg cramping.  Tr. 674.  On December 15, 2016, Plaintiff's doctors suggested surgery after Plaintiff reported continued neck and bilateral arm pain as well as balance and gait difficulties, coupled with low back pain "that she says is actually worse than her cervical pain."  Tr. 641.

Moreover, at the hearing, Plaintiff testified that she experienced neck pain, Tr. 103, and described feelings of numbness in her hands and arms, Tr. 111, all of which limited her ability to lift.  She reported low back and hip pain that limited her ability to walk and stand, and prevented her from walking for periods in excess of 10 to 15 minutes.  Tr. 116-17.

It was therefore error for the ALJ to rely extensively on Dr. Carraro's opinion regarding Plaintiff's ability to walk, stand, and sit without limitation, when the 2016 MRI demonstrated that Plaintiff's condition had worsened.  "This is not the rare case in which the impairments were so minor that the ALJ could render a common sense assessment of Plaintiff's abilities."  *Fambo v. Comm'r of Soc. Sec.*, 474 F. Supp. 3d 603, 608 (W.D.N.Y. 2020) (finding consultative opinion

6

stale when it did not account for deterioration in imaging). Accordingly, the Court finds that Dr. Carraro's 2015 opinion was stale and thus cannot constitute substantial evidence on which the ALJ could base her RFC finding.

Finally, it is worth noting that, while giving great weight to other parts of the opinion, the ALJ rejected that part of Dr. Carraro's opinion regarding Plaintiff's limitations for manipulating objects and crouching. But the 2016 MRI and subsequent treatment notes seem to *support* that part of Dr. Carraro's opinion regarding Plaintiff's limitations for manipulating objects and crouching, suggesting that the ALJ should have incorporated such limitations into the RFC.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings (ECF No. 6) is GRANTED, the Commissioner's motion for judgment on the pleadings (ECF No. 12) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this Decision and Order, pursuant to sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3). The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 19, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court